IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION H-12-0244 |
| v. | § | |
| | § | CIVIL ACTION H-16-1994 |
| VALNITA TURNER, R.N. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Valnita Turner, represented by counsel, filed a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. (Docket Entry No. 298.) The Government filed a response, (Docket Entry No. 299), to which she filed a reply (Docket Entry No. 305).

Having reviewed the section 2255 motion, the Government's response and Defendant's reply, the record, and the applicable law, the Court DENIES the motion for the reasons that follow.

*Background and Claims*

A jury found Defendant guilty of conspiring to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 2), and four counts of substantive violations of the health care fraud statute, 18 U.S.C. § 1347 (Counts 5–8). The Court subsequently sentenced Defendant to 120 months' imprisonment on Count 2 and 31 months' imprisonment on Counts 5 through 8, to be served concurrently with each other but consecutively to Count 2, for a total prison term of 151 months, to be followed by three years of supervised release. The Court held

Defendant jointly and severally liable with others named in the indictment for restitution in the amount of $3,011,899.09.

Defendant's convictions and sentences were affirmed on appeal. *United States v. Turner*, Appeal No. 14-20399 (5th Cir. Aug. 6, 2015).

As grounds for relief in the instant proceeding, Defendant claims that counsel was ineffective in the following particulars:

1. Failing to communicate or negotiate a plea offer and cooperation benefits;

2. Failing to review discovery and government evidence or discuss trial strategy prior to trial;

3. Failing to subject the Government's case to meaningful adversarial testing;

4. Failing to provide proper advice as to Defendant's right to testify;

5. Failing to challenge the sufficiency of the evidence as to Count Eight of the indictment;

6. Failing to have a forensic accountant conduct an analysis of the alleged losses; and

7. Failing to challenge the aggravating role enhancements.

The Government argues that these claims are without merit and should be denied.

***Legal Standards***

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in

violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney, and are provided a liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

## Ineffective Assistance of Counsel

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). A court need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

A counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011). To overcome that presumption, a habeas petitioner must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 121–22 (internal quotations omitted). The standard for judging counsel's representation is a deferential one. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.*

Defendant contends that counsel was ineffective in the following instances.

*Plea Offer and Cooperation Benefits*

Defendant argues that trial counsel was ineffective for failing to communicate or negotiate a plea offer and cooperation benefits. Specifically, she claims that counsel "wholly failed to address, on any legitimate basis, the possibility of her pleading guilty and seeking a plea agreement, or cooperating for a sentence less than what she would be exposed to by proceeding to trial." (Docket Entry No. 298, p. 5.)

Defendant's arguments are belied by the record. The Court inquired into the status of any plea offers the morning of trial, and Defendant herself agreed on the record that she had no interest in settling without a trial:

> THE COURT: All right. The only other thing I want to make sure of is that the defendant has been properly advised with respect to any offer that the Government has made with respect to a plea. And I don't need to know the details of whatever has been discussed, but I want to make sure that the defendant knows whatever the Government has offered, you've conveyed that to her, and it's her wish to proceed to trial.
>
> DEFENSE COUNSEL: Yes, Your Honor. And would Your Honor like to address the defendant or may I proffer or . . .
>
> THE COURT: You can proffer.
>
> DEFENSE COUNSEL: I've represented the defendant for some time, since prior to the superseding indictment. We have had a number of conversations about settling the case, but each time the defendant's response is unequivocally that she does not want to settle. So, for that reason, I've always communicated to the Government that I'm not interested in exploring particular negotiations, but I'm satisfied that the defendant has done all that knowingly and with the information that she needs to make those decisions.

5

> THE COURT: All right. Is that correct, [Defendant]?
>
> THE DEFENDANT: Yes, it is, Your Honor.
>
> THE COURT: All right. Very good.

(Docket Entry No. 272, pp. 16–17.)

It is well established that "[s]olemn declarations in open court carry a strong presumption of verity," creating a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). The record, as well as this Court's own recollections, clearly show that Defendant herself had no interest in pleading guilty as of the morning of trial and had wanted to proceed forward. Defendant's self-serving and conclusory assertions to the contrary fall far short of satisfying the element of deficient performance under *Strickland*. *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001). No deficient performance is shown.

Even assuming counsel were deficient in not seeking a plea agreement under such circumstances, Defendant has not shown actual prejudice. Defendant must show that but for counsel's alleged error, "there is a reasonable probability that [a] plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were

imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). Defendant does not meet, or even attempt to meet, this burden of proof imposed by *Strickland* and *Lafler*.

Defendant fares no better in arguing that counsel failed to discuss "cooperation benefits" with her prior to trial. She presents at best vague speculation that she could have cooperated with the Government to obtain a lower sentence. No details or explanations are provided, and her generalized assertions are insufficient to raise a viable claim under *Strickland*. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).

In her reply to the Government's response, Defendant admits that the record is accurate, but argues that it is incomplete and that an evidentiary hearing is necessary. In support, she references her affidavit submitted with her section 2255 motion, wherein she asserts that, had her counsel explained or discussed with her the consequences of proceeding to trial and the sentencing guidelines, she would have "been adamant in cooperation and accepting a plea offer." (Docket Entry No. 298-2, p. 5.) These post-conviction assertions are insufficient to overcome the in-court testimony she gave this Court three hours before trial, wherein she verified having numerous discussions with counsel regarding settling the case and unequivocally declining any settlement. *See Blackledge*, 431 U.S. at 73–74; *Sayre*, 238 F.3d at 635.

Moreover, her assertion that counsel "never adequately explained my options in pursuing cooperation and plea benefits" are generalized and unsupported by any facts showing how counsel's explanations were inadequate or what he failed to explain. Nor does

she identify the "cooperation" she could have offered the Government in exchange for a reduced sentence. Regardless, she admits in her affidavit and through her daughter's affidavit that counsel attempted to contact the Government regarding her cooperation prior to sentencing, but that the Government did not return his calls. (Docket Entries No. 298-2, p. 5; No. 298-3, p. 8.) An evidentiary hearing is not required under these circumstances.

Relief under section 2255 is unwarranted, and Defendant's claim is denied.

*Document Review and Trial Strategy*

Defendant claims in a general, conclusory fashion that "[t]rial counsel was ineffective for failure to review discovery and government evidence or discuss strategy prior to trial" with her. (Docket Entry No. 298, p. 7.)

Defendant's assertion that counsel did not review any pretrial discovery documents or evidence is speculative, unsupported in the record, and provides no basis for either habeas relief or an evidentiary hearing. Moreover, Defendant's own testimony contradicts her claim that counsel never discussed evidence with her. Although she states in her post-conviction affidavit that counsel never sat down with her to review or discuss the Government's evidence, she testified at trial that she reviewed subpoenaed files with trial counsel prior to trial. (Docket Entry No. 275, p. 516.) Given that she acknowledged reviewing at least some evidence with counsel prior to trial, it is incumbent upon her here to identify the documents or evidence counsel purportedly withheld from her and show how she was prejudiced.

8

Defendant meets neither of these requirements, and deficient performance and prejudice under *Strickland* are not established.

Likewise, Defendant's assertion that counsel never discussed trial strategy with her is again refuted by her own assertions. Although she claims that counsel never discussed trial strategy, she states in her affidavit that it was counsel's opinion that the Government had only circumstantial evidence against her and that she would prevail at trial. In acknowledging counsel's opinion, Defendant confirms both that counsel had reviewed the Government's evidence (contrary to her earlier assertion) and had discussed his trial strategy with her. Defendant again establishes neither deficient performance nor actual prejudice under *Strickland*.

Relief under section 2255 is unwarranted, and Defendant's claim is denied.

*Meaningful Adversarial Testing of Government's Case*

Defendant next argues that counsel "failed to undertake meaningful adversarial testing of the Government's case." Specifically, she claims that counsel's "pretrial investigation fell below an objective standard of reasonableness and was constitutionally inadequate," and that counsel did not set forth a "real challenge" to the government's case through rebuttal testimony. (Docket Entry No. 298, pp. 10–11.)

With respect to counsel's allegedly inadequate pretrial investigation, Defendant proffers no specificity as to what further investigation would have revealed and how it would have altered the outcome of her case. *See United States v. Green*, 882 F.2d 999, 1003 (5th

9

Cir. 1989). In absence of such factual support, neither deficient performance nor actual prejudice are shown, and Defendant's conclusory claim has no merit. Moreover, the trial record shows that counsel cross-examined every significant government witness and called four separate witnesses during the defense's case-in-chief.

Defendant further fails to show that counsel did not challenge the Government's case through presentation of rebuttal testimony. As the Fifth Circuit has held,

> [T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.

*Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Defendant meets none of these requirements. Her conclusory assertion that counsel was ineffective in failing to call rebuttal witnesses is unsupported, and affords no basis for habeas relief. Defendant establishes neither deficient performance nor actual prejudice under *Strickland*.

Relief under section 2255 is unwarranted, and Defendant's claim is denied.

*Right to Testify*

Defendant claims in her habeas motion that counsel was ineffective in providing "inappropriate" and "improper" advice regarding her right to testify. (Docket Entry No. 298, p. 12.) However, she fails to identify any purported inappropriate or improper advice she received from counsel. Indeed, in her section 2255 affidavit, Defendant states nothing more than, "[Counsel] never explained to me that the decision to testify at trial *was mine alone to*

10

*make.*" (Docket Entry No. 298-2, p. 6, emphasis added.) Defendant cites no Supreme Court or Fifth Circuit authority holding counsel deficient for failing to include this precise phrase in his advice, and any failure to inform Defendant that the decision was hers alone to make does not, standing alone, constitute ineffective assistance.

Aside from disputing counsel's language deficiency, Defendant makes no argument that counsel never told her she had the right not to testify. Glaringly absent from Defendant's affidavit is any testimony that she never wanted to testify, that counsel coerced or forced her to testify, or that had counsel expressly said the decision was "[hers] alone to make," she would have elected not to testify. Consequently, Defendant establishes neither deficient performance nor actual prejudice under *Strickland*.

Relief under section 2255 is unwarranted, and Defendant's claim is denied.

*Insufficiency of the Evidence*

Defendant next contends that counsel should have challenged the sufficiency of the evidence to support her conviction under Count 8, which found her guilty of health care fraud as to home health services associated with Medicare beneficiary P.O. Defendant also argues that counsel's failure to raise the challenge increased her burden of proof on direct appeal.

On direct appeal, Defendant challenged the sufficiency of the evidence as to Count 8. The Fifth Circuit Court of Appeals held as follows:

Turner's challenge hinges on the difference between the government's evidence supporting Count 8 and its evidence supporting the other counts of conviction. As for Counts 5, 6, and 7—which charged Turner with healthcare fraud based on claims submitted with respect to Medicare beneficiaries B.J., M.D., and J.C., respectively—the government's evidence showed that these beneficiaries' doctors had not ordered home-health services, and that Turner herself had signed in Box 23 of the fraudulent CMS–485s relating to these beneficiaries. As for Count 8, however, the government presented no direct evidence that home-health services were not ordered by a referring doctor, and Box 23 of the relevant CMS–485 was signed not by Turner, but by another Prestige nurse. *Thus, although the reimbursement claims that formed the basis of Count 8 are indisputably fraudulent insofar as they are based on a CMS–485 signed by a doctor other than the one listed as the referring doctor, Turner argues, essentially, that the government failed to prove that this fraud is attributable to her.*

*"A defendant need not have actually submitted the fraudulent documentation to [Medicare]," however, "in order to be guilty of health care fraud." And in any event, there is sufficient evidence in the record from which the jury could conclude that Turner at least aided and abetted Prestige's submission of fraudulent reimbursement claims related to P.O.* As an initial matter, it is undisputed that Prestige is one of the entities that Turner used to further the overall scheme: Prestige was located in the same building as the other three entities involved in the scheme (Houston Compassionate, Texas Comprehensive, and Jackson Home Health); Turner was director of nursing at Prestige and distributed to it the business of some of her illegally recruited patients; and, in presenting evidence as to Count 7 of the indictment—a conviction that Turner has not appealed—the government showed that Turner personally signed off on Medicare beneficiary J.C.'s fraudulent CMS–485 in her capacity as director of nursing at Prestige.

*Furthermore, the jury could specifically have linked Turner to Prestige's fraudulent submission of claims related to P.O. This is so because the jury could have concluded that P.O. was one of the patients whose health information Turner bought from Thomas, and thus who became a patient of Prestige only as a result of Turner's illegal recruitment.* First, P.O.'s name appears on the Hospital's list of approximately 2,400 patients whose health information Thomas accessed while a Hospital employee. Second, Thomas testified that he sold the health information of "2,000 or more" patients to

12

> Turner—a number at least near the total number of patients whose health information Thomas accessed. Finally, the CMS–485 and other documents relating to services provided to P.O. featured invalid physician countersignatures, giving rise to a reasonable inference—and thus an inference that, in reviewing the jury's verdict, we must draw . . . that P.O. was not legitimately referred to Prestige, but instead became a patient only after Turner recruited her using the stolen health information. Concededly, this is not overwhelming evidence that Turner illegally recruited P.O. to Prestige, thus aiding and abetting Prestige's later submission of fraudulent, P.O.-related claims to Medicare. But it is certainly some evidence, and, since Turner failed to preserve her sufficiency argument in the district court . . . it is more than enough to sustain her conviction.

(Docket Entry No. 295, citations omitted, emphasis added.)

Although the Fifth Circuit rejected Defendant's challenge under a "plain error" review, it set forth relevant evidence supporting the conviction, as shown in italics. This Court has reviewed the trial record and relied on its own recollection and the evidence cited by the Fifth Circuit. In so doing, the Court finds that Defendant fails to meet her burden under *Strickland* to establish that this Court would have granted counsel's objection had it been timely presented. Thus, to the extent Defendant complains that counsel failed to challenge the sufficiency of the evidence as to Count 8 prior to appeal, she has established neither deficient performance nor actual prejudice as to either the trial or appeal.

Relief under section 2255 is unwarranted, and Defendant's claim is denied.

*Forensic Accounting*

Defendant also claims that counsel was ineffective for failing to have a forensic accounting conducted on the loss amount for which she was held responsible. She concedes

that counsel filed objections to the loss amount, but argues that "no real effort was made to have the losses reviewed or substantiated in any way by an accountant or even a bookkeeper." (Docket Entry No. 298, p. 18.)

As explained earlier, to prevail on an ineffective assistance claim based on counsel's failure to call or utilize a witness, expert or layman, defendant must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day*, 566 F.3d at 538. Here, Defendant's conclusory assertions fail to show that an accountant, bookkeeper, or other forensic expert was available to review the evidence, fails to set out the witness's anticipated testimony, and fails to show how the testimony would have been favorable to the defense. Defendant does not demonstrate that, but for counsel's alleged deficiency, there is a reasonable probability that the result of the trial would have been different or that she would have received a lower sentence. Defendant's claim is wholly speculative, warrants no relief, and is denied.

*Aggravating Role Enhancements*

Defendant argues that counsel was ineffective for failing to object to the aggravating role enhancements applied pursuant to U.S.S.G. §2B1.1(B)(2)(A) (mass marketing) and §3B1.3 (abuse of public trust). She claims that this error prejudiced her at both sentencing and on appeal. Her claim is without merit.

To warrant relief for trial error under *Strickland*, Defendant must establish that, had counsel raised the objections, this Court would have granted relief. Based on a review of the record and the undersigned's personal recollections, the Court is not inclined to agree that counsel's objections would have been granted.

The two-level increase applies if the offense was committed through mass marketing. U.S.S.G. § 2B1.1(b)(2)(A)(ii). "Mass marketing" itself is defined in U.S.S.G. § 2B1.1, cmt. n.4 as "a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to . . . purchase goods or services[.]" In this instance, the enhancement applied to Defendant via relevant conduct as to mass marketing. As stated in the PSR,

> Investigation determined that solicitation by use of a marketing company, Texas Comprehensive Healthcare Resources, Inc., was utilized to induce a large number of individuals to be solicited for home healthcare services, so that Valdie Jackson via Jackson Home Healthcare and Valnita Turner via Prestige Health Services and Houston Compassionate Care, could bill Medicare for home healthcare services which was either medically unnecessary or not authorized at all. Texas Comprehensive Healthcare Resources, Inc. was owned by Valnita Turner. According to the investigating agent, employees from Texas Comprehensive Healthcare Resources, Inc. would utilize the individually identifiable health information sold by Jarvis Thomas to Valdie Jackson, and contact the patients in order to solicit them for home healthcare services through either Jackson Home Healthcare, Prestige Health Services or Houston Compassionate Care. Thus, the offense was committed through mass-marketing.

(Docket Entry No. 219, ¶ 48.)

The Court adopted the PSR's finding regarding the enhancement and relied on it as a basis for its own guidelines findings. This finding was supported in part by the trial testimony of the Government's lead agent with the United States Department of Health and Human Services, Korby Harshaw. Harshaw testified in detail at trial how the home health agencies linked to Defendant used stolen patient information to solicit a substantial number of patients for unnecessary and unauthorized home health services in furtherance of the criminal scheme. (Docket Entry No. 275, pp. 360–372.)

The record supports a finding that Defendant's scheme involved the solicitation of a large number of individuals for medically unnecessary and unauthorized services. Because counsel was not deficient in failing to raise the groundless objection, Defendant sustained no actual prejudice either at sentencing or on appeal.

Defendant's arguments regarding the public trust enhancement are equally unpersuasive. A defendant's sentence is increased by two levels if she "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. A "public or private trust refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3, cmt. n.1.

Defendant faults counsel for not directing the Court to a split in authority among the various circuits as to whether the abuse of trust enhancement requires evidence regarding a

victim. However, this Court is bound by Fifth Circuit precedent, which has "never held, however, nor do the guidelines explicitly require, that the determination whether a defendant occupied a position of trust must be assessed from the perspective of the victim." *United States v. Buck*, 324 F.3d 786, 794 (5th Cir. 2003). Defendant presents no Fifth Circuit precedent holding to the contrary. Had counsel raised this objection at sentencing in reliance on a circuit split, this Court would have deferred to Fifth Circuit precedent as it existed at that time. Thus, Defendant also fails to demonstrate that, but for counsel's failure to raise the objection, there is a reasonable probability that the Fifth Circuit would have ruled in her favor on appeal. Because counsel was not deficient in failing to raise the groundless objection, Defendant sustained no actual prejudice at either sentencing or on appeal.

Defendant establishes neither deficient performance nor actual prejudice under *Strickland*. Relief under section 2255 is unwarranted, and her claim is denied.

### *Evidentiary Hearing*

An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "A § 2255 motion requires an evidentiary hearing unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Harrison*, 910 F.3d 824, 826–27 (5th Cir. 2018).

The motion, response, reply, and records in this case conclusively show that Defendant's claims are based upon unsupported generalizations and/or she would not be entitled to relief even if her factual assertions were true. Defendant is not entitled to habeas relief and no evidentiary hearing is necessary.

## *Conclusion*

Defendant's motion for relief under section 2255 (Docket Entry No. 298) is DENIED. A certificate of appealability is DENIED.

The Clerk of Court is ORDERED TO ADMINISTRATIVELY CLOSE Defendant's ancillary civil case in C.A. No. H-16-1994 (S.D. Tex.).

Signed at Houston, Texas on April 4, 2019.

Gray H. Miller
Senior United States District Judge